## MARSTON *a.* VULTEE.

*New York Superior Court; General Term, March,* 1861.

CHATTEL MORTGAGE.—FRAUD.—QUESTION OF FACT

A chattel mortgage, which is made with the purpose and effect of allowing the mortgagor to continue in possession, and to sell the mortgaged goods at retail, and receive the proceeds to his own use, is fraudulent and void as against creditors; and even if the instrument should not, on its face, express that intent, if it is proved by clear and uncontradicted evidence *dehors* the instrument, it must be found fraudulent by the jury, or their verdict should be set aside as against evidence.

The provision of the statute, which makes all questions of fraudulent intent, concerning fraudulent conveyances, questions of fact to be determined by the jury, does not make their verdict unqualifiedly supreme and final on the question; and a verdict against evidence may be set aside, as in any other case; and if the court submit the question of fraud to them generally, without proper instructions, the verdict may be set aside in like manner.

This action was brought to recover possession of certain property which had been levied on by the defendant Vultee, as a constable, under an execution issued out of the District Court of the city of New York, for the first judicial district, upon a judgment recovered by the Manhattan Firearms Manufacturing Company against Robert Marston. The plaintiff claimed the

property by virtue of a chattel mortgage executed to her by
said Robert Marston, the son of the plaintiff. Robert Marston
was a gunsmith, and kept a store; he mortgaged his stock in
trade to the plaintiff, his mother. She left the property, after
the mortgage to her, in his possession, with directions to go on
and sell and treat the property as he had done before the mort-
gage. The property was levied upon by Vultee, while in the
possession of Robert Marston, to satisfy the said judgment.

The only evidence given as an excuse for leaving the prop-
erty in possession of the mortgagor was that of the plaintiff
herself, and that was, that she did it to enable him, the mort-
gagor, to support his family.

Exceptions were also taken to a part of the charge.

The action was tried before a jury on the 12th day of May,
1860. The jury found for the plaintiff, and on the first day of
June, 1860, judgment was entered for plaintiff. The defend-
ants then moved for a new trial at a special term of the court
held in November, 1860, which was refused, and the defendants
then appealed from the judgment, and from the order denying
a new trial, to the general term of the court.

*James L. Phelps, jr.,* for the appellant.

*C. B. Wheeler,* for the respondent.

By the Court.—Woodruff, J.—It was held in Edgell *a.* Hart
(9 *N. Y.* (5 *Seld.*), 216), that where it is provided in a mortgage
upon chattels, either in express terms or by necessary implica-
tion, that the mortgagor shall not merely continue in possession,
but that he may continue to retail the mortgaged property and
receive the proceeds to his own use, the mortgage is fraudulent
and void as against creditors, and it is the duty of the court so
to declare; and there is no question to be submitted to the
jury. The instrument is of such an import that it must be
pronounced void by its own provisions, and a verdict sustaining
it as a valid instrument must be set aside as often as one should
be rendered.

The reason why it must be so pronounced is, that the writing
furnishes conclusive evidence of the fraudulent intent. The
instrument cannot operate according to its provisions without

Marston *a.* Vultee.

defrauding creditors. It cannot, therefore, be permitted to operate at all.

If in any case a mortgage upon chattels is, in fact, made and delivered under that identical arrangement, and with that same purpose, it must be held alike fraudulent and void as against creditors, although the instrument does not, on its face, express that intent. It is because the instrument is made and delivered with intent that it shall operate in a manner which hinders, delays, and defrauds creditors, that it is void; and when that is proved, either by the language of the instrument or by clear and uncontradicted evidence *dehors* the instrument, it must be so found by the jury, or their verdict should be set aside as against evidence. The provision which makes all questions of fraudulent intent, under our statute concerning fraudulent conveyances, questions of fact to be determined by the jury, does not make their verdict unqualifiedly supreme and final on the question. If they render a verdict against the evidence, it may be set aside with the same propriety as in any other case; and if the court submit the question of fraud to them generally, without proper instructions, the verdict may be set aside in like manner.

Hence, Mr. Justice Denio says, in Gardner *a.* McEwen (9 *N. Y.* (5 *Seld.*), 126), in substance, if there be an agreement between the mortgagor and mortgagee, that the former may continue his business of buying and selling as usual, the mortgage to attach to what might remain when it should have to be enforced, the jury should be instructed that such arrangement renders the mortgage void as against creditors, and to find accordingly. When it is afterwards said that the indications of fraud arising upon possession of the goods, and the conduct of the parties respecting them, must be submitted to the jury, it was not intended to say any thing inconsistent with the proposition that if the jury should find that such an arrangement was made, it is their duty to find the mortgage fraudulent and void; it is plainly suggested that if the verdict in such case should (the fact of the arrangement not being denied) uphold the instrument, the verdict should be set aside.

We have no hesitation in saying that the views thus suggested are in harmony with the adjudged cases, as well as with our own opinions.

Under this exposition of the subject, how stands the case of the present plaintiffs?

We will assume that there was fairly and honestly due to her from her son the debt which the mortgage was given to secure. The mortgage was given to her duly executed and acknowledged upon his stock of goods. It was on its face legal and valid, and was duly filed as required by the statute. But the plaintiff herself states the arrangement under which it was executed and delivered. If necessary, it might be added that other witnesses strengthen the proof of fraud, but the plaintiff can have no cause to complain if her own statement of the transaction be taken as true, and her rights be tested by that.

She says: "After the mortgage was executed and given to me, I allowed him to carry on his business and sell just as he did before; I never took possession of any of the things mentioned in the mortgage; I never carried any of them away, but left them with him to sell and use as he did before the mortgage was given; it was spoken of at the time of the giving the mortgage that he was sued, and that a judgment would be entered against him; he never paid me any of the money back; after the mortgage was given, and before the levy, I did not take away any of the property; it was spoken of at the time of the mortgage being executed, and I told him that he could go on with the property as before, so as to support his wife and children." However true it may be that the case discloses a kind and maternal regard on the part of the plaintiff for her son and his wife and children—a willingness to aid him and to give him indulgence, that he and his wife and children might be supported, at the hazard even of losing the money she had lent him—we cannot resist the conclusion that, according to her own statement, this mortgage was fraudulent and void upon the very grounds above stated. In fact, if the arrangement was carried out, the mortgage was no security to her at all, and was not intended to be. If he sold the property, as it was agreed he might, then she got nothing. Her testimony is very clear, however, to the distinct fact that it was spoken of when the mortgage was given; and she agreed that he might go on as before, and, notwithstanding the mortgage, apply the property to his own use and the support of his family. The form of a mortgage was interposed between the property and his

creditors, not in order to secure to the plaintiff her money, but in order that the debtor might retain possession and appropriate the proceeds of his own sales to his own benefit, notwithstand: ing or in spite of impending judgments.

We think, therefore, the defendants were entitled to have the jury instructed, that if the arrangement testified to was made at the time the mortgage was given, that was evidence of a fraudulent intent, which entitled the defendants to their verdict, and that it was erroneous to submit to them the question whether the plaintiff had shown a sufficient excuse for leaving the property with her son under the arrangement she had testified to.

In this we do not mean to say that in every case in which, a mortgage being given on a stock of goods, the mortgagor continues to sell, the mortgage is to be necessarily deemed fraudulent; but where the arrangement is made between the mortgagee and the mortgagor that the latter may do so and apply the proceeds to his own use, whether that arrangement is shown by the face of the instrument or is proved otherwise to be a part of the terms or conditions on which the mortgage was given, such arrangement makes the arrangement necessarily fraudulent, because it operates of necessity to hinder, delay, and defraud creditors—it secures to the debtor the use and benefit of his property and its proceeds, while it protects it from levy and sale for the payment of his debts.

The judgment must therefore be reversed, and a new trial granted, costs to abide the event.